IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| LAWRENCE RUPERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 108-066 |
| | ) | |
| RONALD STRENGTH, Sheriff, Richmond County Sheriff's Office, et al., | ) ) ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Central State Prison in Macon, Georgia, commenced the above-captioned case in the Superior Court of Richmond County. (Doc. no. 1). Defendants removed the matter to this Court, (id.), and filed motions to dismiss. (Doc. nos. 6, 10). Plaintiff opposed the motions and also filed an amended complaint. (Doc. nos. 7, 13). Thereafter, Defendants filed motions to dismiss the amended complaint. (Doc. nos. 14, 15). Plaintiff filed a response in opposition to the motions to dismiss the amended complaint (doc. no. 25), to which Defendants filed a reply in support of their motions to dismiss. (Doc. no. 29). Plaintiff also filed a motion for injunctive relief. (Doc. no. 24). For the reasons set forth below, the Court Reports and Recommends that Defendants' motions to dismiss (doc. nos. 6, 10, 14, 15) be **GRANTED**, that Plaintiff's motion for injunctive

relief and request for a hearing (doc nos. 24-1, 24-2) be **DENIED**, and that this case be **CLOSED**.

## I. BACKGROUND

As noted above, Plaintiff commenced his lawsuit against Defendants in the Superior Court of Richmond County. (Doc. no. 1). Defendants Danny Craig, Ashley Wright, and Sheryl L. Hudson filed their joint answer to Plaintiff's complaint on May 27, 2008, the same date that all Defendants jointly removed the case to this Court. (Id.). Thereafter, on June 20, 2008 and July 16, 2008, Defendants filed their respective motions to dismiss Plaintiff's complaint. (Doc. nos. 6, 10). On August 8, 2008, Plaintiff submitted his amended complaint.[1] (Doc. no. 13). Defendants then filed their respective motions to dismiss

---

[1] In the prayer for relief section of Plaintiff's amended complaint, Plaintiff requests that the Court permit Plaintiff to amend his complaint. (Id. at 17). Thus, it appears that Plaintiff, indirectly sought leave of the Court to file an amended complaint, though his amended complaint was simply filed into the record.

Federal Rule of Civil Procedure 15(a) provides in pertinent part, "[a] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." While leave to amend is generally freely given, Foman v. Davis, 371 U.S. 178, 182 (1962), it is by no means guaranteed. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A 1981). "The function of Rule 15(a), which provides generally for the amendment of pleadings, is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer." 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1473. However, the decision on whether to grant a motion to amend is within the sound discretion of the trial court. Addington, 650 F.2d at 666. "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Local 482, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Ind. v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (quoting Foman, 371 U.S. at 182).

Defendants did not object to Plaintiff filing an amended complaint, and they filed their respective motions to dismiss the amended complaint. (Doc. nos. 14, 15). Additionally, it appears that there has been no undue delay in filing, bad faith or dilatory motives, or prejudice to the opposing parties, with respect to Plaintiff's amendment to the complaint.

2

Plaintiff's amended complaint. (Doc. nos. 14, 15).

Plaintiff alleges in his amended complaint that he is a Panamanian citizen and thus a foreign national. (Doc. no. 13, p. 4). Plaintiff maintains that a foreign national in the United States, if arrested has the right to contact his nation's consulate and request assistance pursuant to Article 36 of the Vienna Convention.[2] (Id. at 2-4). On September 1, 2001, Plaintiff was arrested by Defendant Bill Kitchen, an investigator with the Richmond County's Sheriff's Office ("RCSO").[3] (Id.). During Plaintiff's interrogation and

---

As such, the Court will proceed as though permission had been granted to file the amended complaint.
    It is noteworthy that the main difference between Plaintiff's original and amended complaints is that he sued all Defendants in their official capacities in the original complaint, but he sued all Defendants in their individual capacities in the amended complaint.

[2]Article 36 reads:

> [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.

Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, art. 36(1)(b).

[3]According to Plaintiff, Defendant Ronald Strength, the Sheriff of Richmond County, is to assure that the RCSO investigators comply with their duties and obligations "to inform Plaintiff that he has a right to contact and communicate with his national consulate, pursuant to Article 36 of the Vienna Convention . . . ." (Doc. no. 13, p. 3). Additionally, Plaintiff claims that Defendant Ashley Wright, then-Assistant District Attorney who prosecuted Plaintiff's criminal case, "was also obligated to ensure that Plaintiff had contact and communications with his national consulate pursuant to Article 36 of the Vienna Convention." (Id. at 3-4).

3

questioning, he maintains that he asked Defendant Kitchen to provide him with the Panamanian Consulate's telephone number, address, and requested that he be permitted to call the Panamanian Consulate. (Id. at 4-5). According to Plaintiff, Defendant Kitchen denied his request. (Id. at 5). Plaintiff maintains that Defendant Kitchen "breach[ed] a special duty owed to Plaintiff by denying Plaintiff's rights under Article 36 of the Vienna Convention." (Id. at 8).

Plaintiff also argues that when he met with his appointed counsel Defendant Sheryl Hudson, he (Plaintiff) explained to her that he had been denied his right to call the Panamanian Consulate. (Id. at 5). According to Plaintiff, Defendant Hudson informed him that Article 36 of the Vienna Convention did not confer a right to Plaintiff to be allowed to contact the Panamanian Consulate. (Id. at 5-6). Plaintiff contends the Defendant Hudson "breached the special duty owed to Plaintiff under Article 36 of the Vienna Convention." (Id. at 6).

On April 25, 2003, Plaintiff plead guilty "but mentally ill" to two (2) counts of aggravated child molestation, and three (3) counts of child molestation. (Id. at 4). Plaintiff was sentenced to fifty (50) years of imprisonment and twenty (20) years of probation. (Id. 4-5). Plaintiff argues that, "without the advice[] of Consulate Assistance, Plaintiff pled guilty "but mentally ill" and was convicted and sentenced [to] a very harsh prison sentence. . . ." (Id. at 7). He alleges that the "Consulate could have negotiated a more favorable guilty plea and sentence in Plaintiff's best interest." (Id.).

As relief Plaintiff seeks an injunction ordering Defendants, "their successors, agents,

4

employers, employees, and all persons acting in concert with them to inform all foreign national arrestee[s] of their rights to consular notification." (Id. at 18-19). He seeks a "nominal judgment in favor of Plaintiff," and the entry of a "punitive and compensatory judgment in favor of Plaintiff[,] against Defendants . . . in an amount sufficient to compensate him for the breach of special duty, tort, negligence[,] and mental anguish suffered by him due to Defendants['] failure to comply with their duty and obligations to inform Plaintiff of his Article 36 of the Vienna Convention rights." (Id. at 19). In addition Plaintiff seeks punitive and compensatory damages for Defendants' "intentional misconduct, but in no event less than $2,500,000 (two million five hundred thousand dollars), together with attorney's fees and costs, litigation costs and such additional relief as the Court may deem just and proper." (Id.).

## II. APPLICABLE LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim presented by a *pro se* litigant like Plaintiff should not be dismissed unless it appears that no relief can be granted by any set of facts that can be proved in support of the complaint's

allegations. Hughes v. Rowe, 449 U.S. 5, 10 (1980) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt from the face of the complaint that the plaintiff can prove no set of facts consistent with the allegation that would entitle him to relief). Granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985). With these principles in mind, the Court turns its attention to the motions at hand.

### III. DISCUSSION

Defendants contend that Plaintiff's case should be dismissed because: (1) Plaintiff has failed to state a claim upon which relief may be granted, as the Vienna Convention does not confer an individual right, (2) Plaintiff's claims are barred by the statue of limitations, as his claims accrued in September 2001 and he did not file the above captioned case until May 2008, (3) Defendants are entitled to qualified immunity, (4) Plaintiff cannot state a claim against Defendants Strength or Craig under 42 U.S.C. § 1983 based on vicarious liability, (5) Defendants Craig and Wright are entitled to prosecutorial immunity, (6) Plaintiff has failed to satisfy the mandatory requirements of the Georgia Tort Claims Act, and (7) individual Defendants are not subject to suit under the Georgia Tort Claims Act. (Doc. nos. 6, 10, 14, 15).

On the other hand, Plaintiff argues that his complaint should not be dismissed because: (1) Articles 5[4] and 36 of the Vienna Convention confer and individual right to consular notification upon detained foreign nationals, and therefore he has stated a viable claim, (2) he brought the above-captioned complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1350, therefore the two year statute of limitations pursuant to 28 U.S.C. § 1983 is inapplicable to his claims, and (3) Defendants are not entitled to any of the alleged immunities. (Doc. no. 25).

Plaintiff's case is based on the premise that Articles 5 and 36 of the Vienna Convention confer an individual right to consular notification upon detained foreign nationals. Accordingly, he claims his rights were violated when he, as a foreign national, was arrested and denied his purported right to contact his nation's consulate. In support of his complaint, Plaintiff cites to a non-binding case outside of the Eleventh Circuit, that found that the Vienna Convention did confer individual rights. (Doc. no. 25, p. 11 (*citing* Jogi v. Voges, 480 F.3d 822 (7th Cir. 2007)).

However, the Eleventh Circuit has considered and rejected the arguments made by Plaintiff. In a recent opinion, the Eleventh Circuit held that "the Vienna Convention does not confer enforceable individual rights." Gandara v. Bennett, 528 F.3d 823, 829 (11th Cir. 2008). The Eleventh Circuit based its holding that the Vienna Convention did not confer individual rights on four principles. First, "the preamble to the Vienna Convention is clear

---

[4]Article 5 of the Vienna Convention describes consular functions. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, art. 5.

that the drafters did not intend to create individual rights." Id. at 827. Second, "the right to protect nationals belongs to the States party to the Convention, noting, no private right is unambiguously conferred on individual detainees such that they may pursue it through § 1983." Id. at 828 (citations omitted). Third, "the Vienna Convention does not provide for private damage actions." Id. (noting the plain words of the Treaty provide that the notification right "shall be exercised," not that failure to notify should be compensated). Fourth, the Eleventh Circuit's prior rule, addressing the Vienna Convention, in relation to a criminal proceeding, held that it did not confer enforceable individual rights. Id. at 829.

The facts of the present case are virtually identical to those asserted in Gandara.[5] Plaintiff's original complaint was filed pursuant to § 1983, and his amended complaint purports to invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1350, as well as well as various provisions of the United States Constitution. Regardless of whether this case was filed pursuant to § 1983 or 28 U.S.C. §§ 1331 and 1350, the fact remains that the Eleventh Circuit has concluded that the Vienna Convention does not confer individual rights. Gandara, 528 F.3d at 830 n.1 (special concurrence) (noting although there are obvious difference between the issues presented in the prior criminal cases and this civil one, in both types of cases the analysis for finding a private right is the same; thus the Convention does not confer individual rights that may be enforced through § 1983 (or § 1350)). As such,

---

[5]The facts proffered in Gandara are similar to those provided by Plaintiff in the instant case. In Gandara, the plaintiff was a foreign national, who was arrested in Glynn County, Georgia. Gandara v. Bennett, Civil Case No. 206-201, doc. no. 1 (S.D. Ga. Sept. 13, 2006). While at the Glynn County Jail, the plaintiff informed the jail officials that he was a foreigner and requested permission to contact his consulate. Id. His request was denied. Id. In Gandara, the plaintiff filed a lawsuit pursuant to 28 U.S.C § § 1331, 1350, Article 26 of the Vienna Convention, and various provisions of the United States Constitution. Id.

8

Plaintiff, without individual rights pursuant to the Vienna Convention, has failed to state a claim upon which relief can be granted.[6] Accordingly, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions to dismiss (doc. nos. 6, 10, 14, 15) be **GRANTED**.

## IV. PRELIMINARY INJUNCTION

Plaintiff filed a "Motion for Preliminary Injunction on Basis of Prayer of Complaint. . . ." (Doc. nos. 24-1, 24-2).[7] In this motion Plaintiff "moves the Court for a preliminary injunction against the Defendants, until further order of the Court, conforming to the prayer of the complaint and amended complaint . . . enjoining the Defendants to comply with their duties and obligations under Article 36 of the Vienna Convention." (Id. at 1-2).

A party moving for injunctive relief must show the following: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to him outweighs the threatened harm an injunction may cause the opponent; and (4) granting the preliminary

---

[6]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

[7]Plaintiff also requests a hearing on the motion for preliminary injunction. (Doc. no. 24-2).

9

injunction will not disserve the public interest.[8] McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537.

Plaintiff has not met his burden of persuasion on all four requisites for obtaining injunctive relief. Specifically, he has failed to show that there is a substantial likelihood that he will prevail on the merits of his claims. Plaintiff requests that the Court enter an injunction in conformance to the relief he seeks pursuant to his amended complaint. As noted above, the Court has recommended granting Defendants' motions to dismiss Plaintiff's case, finding that he has not stated a claim upon which relief can be granted. Accordingly, Plaintiff has not shown that there is a substantial likelihood that he will prevail on the merits. Thus, Plaintiff has failed to meet his burden of persuasion on all four requisites for injunctive relief.

In sum, Plaintiff has failed to show a substantial likelihood that he will prevail on the merits of his claims, and therefore, he cannot meet his burden of persuasion on all four

---

[8]Here, Plaintiff has styled his motion for injunctive relief as one for both a temporary restraining order and a preliminary injunction. A temporary restraining order is usually sought "to preserve the status quo until the Court can conduct a thorough inquiry into the propriety of a preliminary or permanent injunction." Hospital Resource Personnel, Inc. v. United States, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994) (Bowen, J.), but it is clear that Plaintiff does not seek to preserve the status quo. In any event, the Court has evaluated Plaintiff's request under the well-known standards generally applicable to both types of requests for injunctive relief. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction." (citation omitted)).

requisites for obtaining injunctive relief. Thus, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for injunctive relief and request for a hearing be **DENIED**.

## V. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions to dismiss (doc. nos. 6, 10, 14, 15) be **GRANTED**, that Plaintiff's motion for injunctive relief and request for a hearing (doc nos. 24-1, 24-2) be **DENIED**, and that this case be **CLOSED**.

SO REPORTED AND RECOMMENDED this 14th day October, 2008, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE